The next cases up are 19-4144 and 19-4157. Stella versus Anderson. Council, please prepare to argue by turning on your mics and cameras. We're waiting for one of them to come on, Mr. Hiron. I'm back. I'm back. No, no, no, no, no. We were waiting for... Oh, here we are. Okay. Now we're ready to proceed. Okay. The three of us are... Can you hear me? ...dispensable, Judge Hartson. Is that counsel or not? Okay, counsel, we're ready to hear you. Your Honor, can you hear me? Yes. Okay. Thank you, sir. My name is Jesse Trinidou. I'm representing the appellant nurse Marvin Anderson and also the appellee sheriff Todd Richardson. I would like to start my argument by correcting several matters in the record, which I discovered when preparing for this hearing that could have been done perhaps by RADA earlier, but they're significant. And you said you are representing whom? The appellant, Marvin Anderson, and Sheriff Todd Richardson, who's an appellee. All right. The plaintiff filed an appeal in this case also. And one of the issues is jurisdiction to hear that appeal, but that'll be dealt with by the plaintiff, I'm sure, the appellee in that case. The errata is this. One of the issues before the district court was whether or not nurse Anderson had grounds to believe that Ms. Miller's symptoms were due to withdrawing from methamphetamine. We cited to the record where that was there. Unfortunately, we used the wrong page number in the appendix. It appears on footnote 17 and footnote 104 of Mr. Anderson's reply brief. And it's the record now reads that the reference to the symptoms of withdrawal from meth are at appendix page 307 and 331. Actually, they're on 305 and 331. And that's where Mr. Anderson goes and assesses Ms. Miller and herself. She talks to him about withdrawing from meth. She talks to him about her nausea, her dizziness, her other symptoms associated with meth. And he says, I came to the conclusion that she had no serious traumatic injury, but was on meth withdrawal. And the second correction leads us right into the issue in this case. Our expert in this case, Dr. Tubbs, and this appears in the original brief, excuse me, in the reply brief on page 13, paragraph 75, footnote 80. And that's where Dr. Tubbs opined that even if they had done a physical assessment of Ms. Miller in the cell at the time of the fall, the results, blood pressure, pulse would have been normal. And the way it reads in the brief, it says Dr. Tubbs stated- Well, sir, that's exactly what the plaintiff's expert, Dr. Starr, said. He says, these are slow progressing injuries, a slow hemorrhage. He says, had they taken those assessments at the time of the fall, they would have been normal. Counsel, let me get to something more fundamental. I'm rather concerned about our jurisdiction to hear your appeal. And it's something that we've been encountering a lot in this court, and it's unfortunate. It seems to me that you are not raising a legal issue other than whether there was sufficient evidence supporting the district court's determination that there was a question of fact. And even though that is, in a sense, in a real sense, a legal issue, the Supreme Court has said interlocutory appeals and qualified immunity are not to resolve those issues. They were to resolve issues of law relating to the extent of qualified immunity. And you start out, well, I mean, what you've done certainly plays in to that view of what's going on in this appeal because you're starting to argue the facts and whether the judge can determine that. No, sir. Okay. With all due respect, we took our facts, and we make this clear in the brief, from the court's finding. The district court said it would make the finding of undisputed facts. And so we've cast, and it's over and over again, we've stated in our briefs, we don't necessarily agree with them because there's no basis for some of them, but we don't challenge them for purposes of this appeal. What we say is based upon what the district court found, we were entitled to qualified withdrawal. Right into that because the district court said, well, Mr. Nurse Anderson, there's nothing in the record to say what were the symptoms of withdrawing from meth. Well, there were, and they're there. The court was mistaken about that. And that's exactly the sort of mistake we don't have jurisdiction to review. No, sir. That's exactly what we're not supposed to do, isn't it? If you, I read the district court misread the record in making a fact determination. No, sir. Once they come to the Cox decision, 800 F third, 1231 from this court, it says, you don't, you can't get involved in where the court says when the court says there's disputes of fact and the jury can find this, the jury can find that. But I think that opinion makes clear that there has to be a basis underlying that fact, but that is irrelevant. Hold on. Not, not so quick under Cox. We have jurisdiction only to the extent it involves abstract issues of law, not fact law. What is the abstract issue of law that you ask us to review? Whether based upon the court's findings, the facts, the court announces the decision, I class are entitled to qualified immunity. The court said, Mr. And again, all that matters is the court said that the nurse Anderson believed he was dealing with someone withdrawing from meth. And then the court goes on to say it. And of course there's nothing in the evidence record to show what those symptoms are. Well, there was, but that's irrelevant for this appeal. And then back into the thing about Dr. Tubbs and Dr. Stark, that is the key issue. Um, what should have in doctor? Well, under Cox, as I understand it, uh, a previous panel of this court held that, uh, the jurisdiction question that judge hearts asked you about really circulates around two questions. One, whether the facts found by the district court could reasonably be found by a jury, uh, to suffice to show a legal violation. It's almost a deborah of sorts. The second is whether the law was clearly established at the time of the alleged constitutional violation period. That's it. Those are the two questions we consider now. Uh, it strikes me that when you start arguing about what the facts are, that that automatically, uh, takes you out of the realm of the first issue. So where, where do I go wrong on that? It's, it's, it's not my version of the facts. It's not the plaintiff's version of the fact it's what the court said. These are the facts upon which I make a rulings. And we're saying, given those facts, we're entitled to qualified immunity as a matter of law. The court found Anderson evaluates her. Anderson takes her pulse. He palpates her. He looks for her injuries. She looks for head injuries, spinal injuries, everything else. He concludes she's not seriously injured, that this is in fact a withdrawal from meth and the facts on the doctors. And this is the issue before the court. Dr. Tubbs said, you wouldn't know at the time the plaintiff's theory is this, you should have taken her vital signs. And although we admit, and they admit this, they would have been normal. Have you continued to retake and that would have told you that she may be, she had a serious injury and that in the court based that upon that the jail's policy was, you can take a vital sign from a person who's, who suffered a fall. The jail's policy was you monitor people, nurse, and the plaintiff said that that's also the standard of care. Well, a violation of the jail's policy and a violation of the standard of care will not support a 1983 civil rights action. And that's what. Well, that's a statement. Is that a statement of fact or expression of hope on your part? It seems to me that that is the question that for, for you to present to us as a reasonable question for the jury, it seems that. No sir, you have to get to what's a clearly established law. The Supreme Court has spoken and this, this court has spoken, says you cannot base a civil rights violation on a breach of the medical standard of care. But the council, you can base the claim on deliberate indifference. And what the judge said, which may be wrong, but I don't think we can review it is there's enough here to suggest that Anderson was deliberately indifferent. He didn't arrange to have any testing, uh, checking of the vital sign, but, but by the way, it's, uh, it's amusing to me, but I think the Cox panel was this panel. I think that's my good luck or misfortune, but the contradictions in the evidence come from the judge who wrote the opinion. The judge, for example, makes a big issue saying, uh, Ms. Miller lay in a cell in the Lima unit, unconscious for three hours. Well, elsewhere in the opinion, she says she wasn't unconscious. She was waving at the doctors when I, when the staff, when I came by to check on her, they asked her if she's okay. She said, fine. And nurse Anderson never saw her. He never knew that excellent arguments, just not once we have jurisdiction to review. But sir, she says that in her opinion, that he never knew about it. Yet tries to base that, make that a basis for the qualified lack of denial of qualified immunity. As I said, we do not challenge her findings. We just say, as stated, even given the internal inconsistencies, uh, we were entitled to qualified immunity. Always deliberate indifference is not doing anything. You can misdiagnose. You can assume that a heart attack, uh, chest pains are indigestion and not a heart attack. Mr. Nor this patient. And the only basis for the, the, uh, monitoring is not constitutionally mandated. It's never appeared in a case. It came from the jail's policy. And what the plaintiff said was a standard of care and their, their issue is this, your honor. They say we agree. And their own doctor says is it would have been normal, but we think the constitution required you to go ahead and monitor when there's no evidence of a serious injury, not even a bruise, no discoloration, no pain, no evidence of a serious injury. She, she hit her head hard. She was dizzy. She couldn't walk right. There may not have been specific, uh, evidence of a spleen rupture, but that was, that was, that was a significant event and Anderson didn't arrange for any follow up checking of vitals. And maybe at most that's negligence. The judge thought that was enough to suggest deliberate indifference. And we can review that at a later point perhaps, but not in an interlocutory. Well, I'm, I'm repeating myself. I apologize. Go ahead. Well, I, again, your honor, we say, based on what she said, the district court found we were entitled to qualified immunity. Anderson, she, and the district court's opinion of the judge even acknowledges that he assessed her. He couldn't have known about the spinal, the spleen injury that he assessed her for a head injury. She never lost consciousness. She talks to him. She walks, she puts on her clothes. The court finds all these findings. It wasn't a case where Anderson does nothing. He may have misdiagnosed it. And as you said, that may have been negligent, but negligence, there's nothing in the jurisprudence that says negligence will support a civil rights violation. And if we're going to say that now, then the law was not clearly established at the time this was decided again, their opinion, their decision is it would have been normal. And the judge also don't want to interrupt you, but I think you have a question. Go ahead. Thank you, your honors. Daniel Bozinski, representing the Appellees and Cross Appellants, Cindy, Stella, and the estate of Heather Miller. I'd like to begin by addressing the arguments that were raised by nurse Anderson, because I think in a way it is dispositive of our appeal against Sheriff Richardson. Sheriff Richardson was granted qualified immunity by the lower court. We don't have, because that's not a final order, we don't have the right to interlocutory appeal. And so that appeal is kind of hitched to the Anderson appeal. We've asked this court to exercise penitent jurisdiction over that appeal, over our appeal. But if the court doesn't have I don't see how the court can exercise penitent jurisdiction over ours then. So I'll address Anderson's arguments first and then maybe briefly address our appeal if the court is interested. Denial of qualified immunity has been recognized as a collateral order, and this court has jurisdiction to address that under very limited circumstances. As I think it was you, Judge Hartz, that mentioned it's generally limited to abstract legal questions. There, and the two that have been recognized are whether the facts as found by the judge are sufficient to establish a constitutional violation. And then the second question is whether the law is clearly established. Nurse Anderson does not dispute that the law is clearly established, if we accept the court's findings of fact, I don't see how there is an argument that it doesn't establish a constitutional violation. To begin with, the court really hasn't made a determination on qualified immunity. It's really only delayed it until the jury has had an opinion. Judge Parrish has found that there are a number of genuine disputes of material fact that have to be resolved before we can even get to the qualified immunity question. There is the question of whether Ms. Miller's presentation at the time that Nurse Anderson came to visit her was sufficient to warrant taking and monitoring vital signs, whether taking and monitoring vital signs could have prevented her death. And then there's the question of whether Nurse Anderson should have been aware of the risks associated with not taking and monitoring her vitals. Those have all been found to be genuine disputes of material fact. She's left them all to the jury to decide. Accepting those facts as this court is required to do on interlocutory appeal, that's a constitutional violation. Go through what the factual questions the district court thought were still present. Did you say that Nurse Anderson should have known? Well, the subjective component of delivering difference is there have to be risks and Nurse Anderson has to actually appreciate those risks. So, there can be circumstances where the risks are obvious, but if the actual defendant doesn't ever come to recognize those risks, there wouldn't be liability on deliberate indifference. But what Judge Parrish found was there's sufficient evidence to put his recognition of the risk in question. A reasonable jury could find that based on the obviousness of the risk, the fact that he violated his personal policy to always take and monitor vitals, the fact that it violated nursing standards, those facts are sufficient to support a jury's finding that he actually did recognize the risk. The only other basis for this court to exercise jurisdiction when it's not a strict legal question is if the record is found to be the version of the facts that the court has found are blatantly contradicted by the record. Now, my understanding is that Nurse Anderson is not arguing that or at least not claiming that that's the basis for the jurisdiction. I think kind of in substance, that is what they're arguing. But the blatant contradiction exception to jurisdiction, it's a very narrow exception, it's very limited, and it's kind of limited to the rare and exceptional case. And the cases that this court has applied that exception are cases where usually there's some sort of video or audio evidence that the court can rely on and say, we can see the actual events the court aired in making that finding. And to the extent that that is, whether in substance or name, that Nurse Anderson is asking for jurisdiction, the record does not blatantly contradict Judge Parrish's findings of the case. As I said, and as this court has mentioned, there is a number of circumstantial evidence to establish his knowledge of the risks. Her presentation at the time that he came to visit her, the fact that she wasn't able to walk, the fact she was dizzy, nauseous, said that she was in pain, though couldn't really point to it that's one of the circumstantial evidence to support his awareness and knowledge of the risk. Again, the fact that he always takes vitals and monitors vitals following such an injury, and he didn't do it in this case, the fact that that is the expectation of the supervisor that he would take and monitor vitals. And then the fact that not taking vitals violates national nursing standards. The argument is that he assumed or he came to the conclusion that this was meth withdrawal and this should all be excused because of that. And there are some cases where the court has found that just misdiagnosis sometimes is not deliberate indifference. But the difference or distinguishing factor here is that Anderson never completed the actual assessment. The assessment required that he take A, B, and C steps. He patted her down, he checked for external injuries, but he never completed the screening to rule out the potential for an internal injury. And that's what question of misdiagnosis. This is a question of failure to actually complete that gatekeeping. He never completed the assessment. He was blind to some facts, and he didn't have all the facts when he made his diagnosis. Furthermore, even if we agree or even if a jury were to find that that was a reasonable diagnosis, she wasn't able to walk. And that fact alone required her to be taken to medical or to be monitored. So even if we give him the benefit of the doubt, say, yeah, there was a basis for meth withdrawal, he then didn't complete the necessary tasks. He didn't provide the adequate medical care after that because she would have been required to have been taken to medical. She would have still required to have been monitored. Even if we excuse her symptoms, it's just mere meth withdrawal. Unless your honors have any additional questions on Anderson's appeal, I think I'll just move on briefly to our appeal as to Sheriff Richardson. So as I mentioned, we don't have an appeal. With respect to your cross appeal or your appeal as you describe it, does that cut in your favor or against you in terms of the standards, the two standards that you've just articulated? Because I see it both ways. Could you rephrase that, your honor? Yes. Yeah. Well, let me break it down this way. What is the basis of your cross appeal? Sheriff Richardson was granted qualified immunity. The court found that there wasn't sufficient evidence of the subjective component. So there wasn't sufficient evidence that he actually recognized the risks associated with the policy that he put into place. And so, again, we don't have a right to appeal, an interlocutory appeal, that decision. And so we asked for pendant jurisdiction on the grounds that that question, whether he violated... So you acknowledge that then maybe that's the answer to my question, that you acknowledge that if we don't have jurisdiction to hear the first case, then your case evaporates as well for lack of jurisdiction. That is, it's totally pendant. Yes. We don't have a base. If it wasn't Nurse Anderson's appeal, we certainly wouldn't be able to have brought our appeal at this time. Ours is hitched to Nurse Anderson's appeal. And I can't, I don't see how this court could square granting jurisdiction to hear our appeal if it in turn finds that there isn't jurisdiction to hear Nurse Anderson's appeal. All right. Thank you. So anyway, pendant jurisdiction is a very limited doctrine. This court only has the ability to exercise that if the appeal on which the court does have jurisdiction is inextricably intertwined with the pendant appeal. I think the case that probably comes closest to our circumstance is, what is it? It's the city of Wynwood case. There, a police chief appealed the denial of qualified immunity. And at the same time, his employer, the city also appealed the denial of summary judgment. And this court granted pendant jurisdiction to, on the city's appeal, finding it essentially ruled that the police chief was entitled to qualified immunity. And that issue resolved the city's appeal because the city could only be liable for the first, for its first amendment violation if there was an employee that violated it. Ours kind of takes those, that similar dynamic, but applies it differently. Our argument is that it's the same identical set of facts. It's the same constitutional violation. And it's potentially coterminous because Nurse Anderson, if he were to prevail on the constitutional violation, that would resolve, that would resolve the sheriff's for his unconstitutional policy. If there is an underlying constitutional violation by an employee and the only employee that we're pursuing is Nurse Anderson. The sheriff argues that it cannot be inextricably intertwined unless it's, unless it's coterminous. So it would have to be coterminous regardless of the court's outcome, which for one, I can't imagine an appeal where regardless of the court's outcome, it's going to automatically resolve another appeal. It's certainly not how the city of Wynwood played out or could have played out. If the court in city of Wynwood had denied a qualified immunity to the police chief, that would not have resolved the city's appeal. Also, I think that argument kind of puts the cart before the horse. If the court can only exercise pendant jurisdiction, if its decision will resolve the pendant appeal, it puts the court in a position where it kind of has to set aside jurisdiction, consider the question before it, consider the arguments, resolve the appeal, and then come back to jurisdiction and decide, well, if we rule this way, is it going to be under that circumstance? Can we then exercise pendant jurisdiction? So there is, I think, grounds for this court to exercise jurisdiction. Obviously, it's discretionary. And obviously, I think it would require this court to find that Nurse Anderson's appeal has jurisdiction. As to the actual merits of the appeal, it's kind of a weird situation because the court has found that the policy that Sheriff Richardson has applied, which is no nursing protocols, no training for the nurses, no supervision for the nurses, there is a question of fact whether that is sufficiently obvious as to justify a deliberate indifference for the municipality. But the court then found that there wasn't enough evidence to present Sheriff Richardson's role to the jury. I'll just point out that the court found that the question of obviousness is a is sufficient for a jury to find that Sheriff Richardson was aware of the risks associated. And that's setting aside the fact that his policy violated internal Davis County policies, which required nursing protocols, violated national standards, which require these nursing protocols. So I think that there's grounds. And the question should at least be presented to a jury. And I see that I'm out of time, Your Honors. Unless you have any other questions, I'll just conclude. I defer to my colleagues, Judge. I'm good. Thank you. Counsel, I think you had a few, yes, a minute and a half left. Yes, sir. Mr. Trenodue, I think I understand what your position is. Let me state it and you can correct me. I think your position is that on the facts found by the district court, the court could not find deliberate indifference. And there's case laws suggesting that on similar facts, you can't establish deliberate indifference. Exactly. So, okay. Well, I think that's exactly, I think you make some good arguments in that regard, but I think that's exactly what we can't do unintellectually. Well, sir, if the facts, it says in the Cox opinion, the principal purpose is to determine whether plaintiff's factual allegations are sufficiently grounded in the record, such that they may permissibly comprise the universe of facts that will serve as the foundation for answering the legal question before the court. So you always have to look at what is the basis for those facts. The court's findings are when you say deliberate indifference requires. That was an appeal after a jury verdict. It wasn't an interlocutory appeal. No, sir. I think the court's opinion has to be, the district court's opinion has to be consistent. You have to look at all the facts that district court found and the ones that favor my people outweigh the ultimate decision the district court made. The district court says, for example, Anderson could not have known. No one could have known that this was a ruptured spleen. Anderson didn't know that she was over in Lima unit laying on the floor. Yet the district court says that's the reason why Anderson, the jury could find that Anderson may have been deliberately indifferent. He has to have the subjective, the findings of district court may do not support its decision in this case. They're internally inconsistent. Thank you, counsel. Judge Hartz, further questions? No, thank you. Thank you. All right, then the court will be in recess for about five minutes and Mr. Heron will announce the recess. Counselor excused. Case submitted.